IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RONALD DEVONE BALCOM, ) | |
| AIS # 158 439 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:19-CV-116-RAH-CSC |
| ) | |
| DONALD VALENZA, et al., ) | |
| ) | |
| Defendants. ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Ronald Devone Balcom filed, pro se, this civil rights action pursuant to 42 U.S.C. § 1983, seeking relief for certain claimed violations of his federally protected rights while confined in the Houston County Jail ("HCJ"), in Dothan, Alabama. Doc. 1. Plaintiff alleges, *inter alia*, while confined in HCJ, Defendants denied Plaintiff adequate hygiene products, intentionally served Plaintiff cold, sifted through food, unconstitutionally restricted television channels, and denied Plaintiff adequate medical treatment for his hernia. *See id*. Plaintiff brings suit against the following defendants: (1) Houston County, Alabama Sheriff Donald Valenza; (2) Jason Smoak, P.A.; (3) James Brazier; (4) Kelita Moore; (5) Melinda Peterson; (6) Glen Jones; (7) James Watson; (8) Thomas Marsh; (9) Sergeant McCallister; and (10) Houston County, Alabama Commissioner Mark Culver ("Defendants"). *Id*. at 1-4. Plaintiff sues Defendants in their official and individual capacities and for relief, seeks monetary damages and for Defendants Moore and Peterson's "stripes" be taken. *Id*. at 10.

Pursuant to the Court's Orders, Defendants filed an answer, special report, supplemental special reports, and supporting evidentiary material addressing Plaintiff's claims for relief.[1] Docs. 30, 32, 34, 36, 38, 46. In these documents, Defendants deny they acted in violation of Plaintiff's constitutional rights. The Defendants also raise the defense of exhaustion in their special report. Doc. 30 at 7-9. Indeed, the Prison Litigation Reform Act ("PLRA") requires that "inmates complaining

---

[1] In response to the Court's March 15, 2019, Order directing Defendant Valenza to provide to the Court the last known address of Defendant McCallister (Doc. 17), Defendant Valenza informed the Court that this individual was not employed at HCJ, and that Defendant Valenza is unaware of the identify of this defendant. Doc. 20. The Court therefore directed Plaintiff to provide the correct name and service address of Defendant McCallister and warned Plaintiff that his failure to comply would result in the Court recommending dismissal of this defendant pursuant to Rule 4(m). Doc. 21. As of the date of this Order, Plaintiff has failed to provide the accurate name and service address of Defendant McCallister. The Court, therefore, recommends dismissing Defendant McCallister pursuant to Fed. R. Civ. P. 4(m).

about prison conditions exhaust prison grievance remedies **before** initiating a lawsuit." *Jones v. Bock*, 549 U.S. 199, 202 (2007) (emphasis added). Defendants argue, because HCJ utilizes a grievance procedure and because Plaintiff failed to adequately exhaust his administrative remedies prior to filing this lawsuit, Plaintiff's claims are barred.

Upon receipt of Defendants' special report and supplemental special reports, the Court issued an Order providing Plaintiff an opportunity to file a response. Doc. 39. The Order informed Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. *Id*. at 2-3. The Order further cautioned Plaintiff, unless "sufficient legal cause" is shown within fifteen days of entry of this Order "why such action should not be undertaken, upon the expiration of the time for the plaintiff to file a response as allowed by this order, the court may at any time thereafter and without further notice to the parties (1) treat the special reports and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is appropriate, and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." *Id*. at 3. Plaintiff filed a response to Defendants' special report. Doc. 40. Pursuant to the directives of the Order entered on September 5, 2019, the Court now treats Defendants' special report as a motion to dismiss with respect to the failure to exhaust claims and as a motion for summary judgment as to any remaining claims and concludes that judgment is due to be granted in favor of Defendants.

I.   **Standard**

Based on the foregoing, the Court deems it appropriate to treat the special report filed by Defendants as a motion to dismiss with respect to the exhaustion defense. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion [defense] ... is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]"). To the extent, however, the Court concludes Plaintiff has properly exhausted his administrative remedies as to any claim, the Court will address the merits of those claims on summary judgment.

"In considering a motion to dismiss, this court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff." *Rose v. Rich*, No. 519CV00123RDPJEO, 2019 WL 6712138, at *2 (N.D. Ala. Nov. 8, 2019), *report and recommendation adopted*, No. 519CV00123RDPJEO, 2019 WL 6702042 (N.D. Ala. Dec. 9, 2019)

(citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004)). "That factual content must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A complaint, or any claim therein, is subject to dismissal under Rule 12(b)(6) when the allegations, on their face, show that an affirmative defense bars recovery on the claim." *Id*. (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003)).

That being said, "[w]here exhaustion—like jurisdiction, venue, and service of process—is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant*, 837 F.2d at 1376 (citation and footnotes omitted). "Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress's intent in enacting the PLRA's exhaustion requirement: that is, to 'reduce the quantity and improve the quality of prisoner suits.'" *Id*. at 1376-77 (citation and footnotes omitted).

The Court has undertaken a thorough and extensive review of all the evidence in this matter. After such review, the Court finds Plaintiff has failed to exhaust his administrative remedies on all pending claims and that this action is due to be dismissed for Plaintiff's failure to exhaust. Indeed, the requests and grievances provided by Defendants demonstrate, while Plaintiff made requests and grievances regarding his pending claims, the only grievance Plaintiff appealed related to Plaintiff's request for adequate hygienic products. Doc. 30-10 at 31. The undisputed record reflects however, Plaintiff filed this grievance on January 26, 2019, and subsequently appealed the response to his grievance on January 28, 2019. *Id*. Approximately one week later, Plaintiff filed the pending civil suit. Doc. 1. Plaintiff's first appeal was later rejected on February 27, 2019, and, in accordance with HCJ grievance procedure, Plaintiff appealed a second time. *Id*. Prior to receiving the second appeal response, Plaintiff was released from HCJ. Doc. 36 at 1. Although Plaintiff was prudent in pursuing his appeal, Plaintiff filed this case prior to completing his administrative remedies and was released after his second appeal. Made clear by Eleventh Circuit precedent, "[t]he time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." *Pavao v. Sims*, 679 F. App'x 819, 825 (11th Cir. 2017) (citing *Goebert v. Lee Cty.*, 510 F.3d 1312, 1324 (11th Cir. 2007)). Thus, "in determining whether [Plaintiff] exhausted his administrative remedies, we do not consider any actions

he took after filing suit. . . ." *Id*. Accordingly, the Court concludes, for the reasons more fully discussed below, this action is due to be dismissed for Plaintiff's failure to exhaust.

**II.      Statement of Facts**

In his complaint, Plaintiff lists seven grounds for relief. In ground one, Plaintiff maintains, as an indigent inmate housed in HCJ, he did not receive sufficient hygienic products and that Defendants knowingly provided an insufficient number of hygienic products. Doc. 1 at 6. Plaintiff also maintains, Defendants "steal funds" from Houston County. *Id*. In ground two, Plaintiff asserts, "[e]ach named Defendant create[s] danger within the jail by 'Boredom' and mental frustration" because food is served cold and, when served, is an inadequate amount. *Id*. As for ground three, Plaintiff takes issue with Defendants' refusal to allow Plaintiff to watch the news. *Id*. at 7. Next, in grounds four and five, Plaintiff asserts inadequate medical treatment of his hernia by Defendant Smoak and maintains Defendant Moore delayed or denied Plaintiff medical treatment. *Id*. at 7-8. In ground six, Plaintiff maintains he lives in unsanitary conditions and that HCJ has mold and mildew on the mattresses. *Id*. at 8. Last, in ground seven, Plaintiff asserts Defendant Peterson was seen "picking through" the inmates' food to determine if too much food was being served. *Id*.

Defendants deny each allegation in Plaintiff's complaint and further maintain, Plaintiff's claims are barred for Plaintiff's failure to exhaust his administrative remedies while confined in HCJ. Doc. 30.

On March 31, 2018, Plaintiff was booked into HCJ due to a parole violation and making a false report to law enforcement. Doc. 30 at 2; *see also* Doc 30-10 at 2, 6-7. On this date, Plaintiff was provided, *inter alia*, the HCJ Handbook. Doc. 30-10 at 10. Included in the HCJ Handbook is a detailed explanation of the jail's grievance procedure. Doc. 30-12 at 8. The Handbook explains, once a grievance is appropriately completed using the pod kiosk, the grievance deputy has 15 days to investigate and answer the grievance. *Id*. Then,

> [i]f the inmate is not satisfied with the response to the grievance, the inmate may appeal the decision using a grievance appeal form. An appeal form may be obtained by asking sheriff's office personnel for an appeal form. The completed grievance appeal form shall be placed in the secure box. . .The sheriff's office member hearing the appeal will have 30 days to answer the appeal. If an inmate is dissatisfied with the response to an appeal, they may repeat the appeal procedure. . .until they reach their third, and final appeal. The jail has a three appeal process and the response to the third appeal is the final decision.

*Id*. Following Plaintiff's confinement in HCJ, Plaintiff was seen on numerous occasions by medical personnel. *See* Doc. 30-11. For example, Plaintiff, who suffers from hernia issues, was seen and treated for his medical concerns and complaints by HCJ medical personnel on April 2, April 8, April

4

10, April 20, May 1, May 22, May 23, June 11, June 30, November 7, November 12, November 22, November 29, November 30, and December 3, 2018.  *Id*. at 2-3, 17-30.  Plaintiff's medical records demonstrate, Plaintiff was also prescribed medication including Toradol, Prilosec, and Trazodone from April 2018, through December 2018.  *Id*. at 4.

Relevant to Plaintiff's grounds for relief, on May 22, 2018, at approximately 10:56 p.m., Corrections Deputies responded to Plaintiff's statements that he needed medical attention.  Doc. 30-5 at 4-5; *see also* Doc. 30-11 at 29.  Plaintiff stated that he was vomiting, had stomach pain, and experienced shortness of breath.  Doc. 30-11 at 29.  After being informed of Plaintiff's condition, Defendant Moore contacted Defendant Smoak, who instructed Defendant Moore to provide Plaintiff blood pressure medication to reduce Plaintiff's blood pressure.  Doc. 30-5 at 4-5; *see also* Doc. 30-11 at 29.  Plaintiff's medical records indicate that Defendant Smoak stated that he would see Plaintiff the following morning.  Doc. 30-11 at 29.  On May 23, 2018, at approximately 8:30 a.m., Plaintiff was seen and treated for his symptoms by Defendant Smoak.  Doc. 30-11 at 22.  Plaintiff's medical records further show, Plaintiff was prescribed Celexa, Norvasc, Prilosec, and Trazodone from December 3, 2018, through March 3, 2019.  *Id*. at 35-36.

While on this prescribed medication, on January 24, 2019, Plaintiff submitted a "Medical Request" to Defendant Smoak in which Plaintiff asserts: "Did you not tell me that [I] can get no [sic] medical treatment for my hernia as long as [I'm] in jail that the jail will not pay for it because a hernia is not an emergency."  Doc. 30-10 at 32.  Defendant Smoak replied one day later and stated: "you will be treated by the standard of care for a hernia.  No elective surgery will be authorized.  At this point, any intervention is elective."  *Id*.  Plaintiff did not appeal this response.  *Id*.

Two days later, on January 26, Plaintiff submitted a "Grievance Issues" form, asserting: "My grievance is [I] am an indigent inmate in the [HCJ.] [T]he rules of the jail state[] we are to shower daily[.] [M]y problem is I [a]m indigent and there's only the indigent packs every 2 weeks and there's no [deodorant]."  *Id*. at 31.  That same day, Plaintiff submitted a second "Grievance Issues" form, in which Plaintiff again asserts, he is indigent, he needs deodorant, the deodorant he has causes his skin to burn, and that the hygiene products provided are insufficient to last two weeks.  *Id*. at 30.  On January 28, Plaintiff received the following response to his first grievance involving hygienic products: "Indigent packs are given out every other week."  *Id*. at 31.  That same day, Plaintiff received the following response to his second January 26 grievance:  "This has been addressed in prior grievance.  Follow the grievance procedure."  *Id*. at 30.  While Plaintiff did not appeal the response to his second grievance (*id*.), Plaintiff appealed the response to his first January 26 grievance.  *Id*. at 31.

Three days later, on January 31, Plaintiff submitted a "Medical Request," asking Defendant Smoak if hernias remedy themselves or if they require surgery. *Id*. at 28. That same day, Defendant Smoak responded to Plaintiff's request and stated: "It is very rare for a hernia to resolve on its own, and it does typically require surgery to correct." *Id*.

Also on January 31, Plaintiff submitted a "General Request," asking for television channels showing black actors. Doc. 30-10 at 29. The response submitted that same day stated: "There [are] movies shown that have people of color in them. Example yesterday you watched Ride along part 2." *Id*. The next day, Plaintiff submitted a grievance asserting that the food being served is consistently cold, that the cameras show the food is sitting for 30 minutes prior to being served, and that the water being served has chemicals in it. *Id*. at 26. The response to Plaintiff's grievance, asserted: "Grievances can only address one issue per grievance. Follow the grievance procedure." *Id*. Plaintiff did not appeal this grievance. *Id*.

Also on February 1, Plaintiff submitted a "General Request," again complaining of the lack of television shows containing black actors. *Id*. at 27. The response asserted: "we have assigned channels to watch." *Id*. The next day, Plaintiff submitted a "General Request," once more complaining of the accessible channels of television. *Id*. at 25. One day later, the response to Plaintiff's request stated television is a right, but a privilege, and that the jail has certain channels to watch. *Id*.

Approximately one week later, on February 8, 2019, Plaintiff filed the pending civil action. Doc. 1 at 17. On February 12, Plaintiff submitted a "Commissary Request," asserting: "I've been trying to order a[n] indigent pack but the kiosk won't let me." Doc. 30-10 at 24. Plaintiff's request received a response approximately one week later stating: "Try again. The commissary company has reset the amount of days to order. You will have to be indigent for 12 days before you can order or have less than $3." *Id*.

Later that month, on February 27, Plaintiff received the following response to his first appeal regarding the alleged inadequate hygienic products: "As Mr. Downs has stated, the indigents packs are given every other week, which includes bathing products." *Id*. at 31. The next day, Plaintiff requested a second appeal. *Id*. On March 4, Plaintiff submitted a medical request for his hernia pain. *Id*. at 35. That same day, Defendant Smoak asserted: "I will be happy to reorder you IBU if you wish. Please advise. Continue the Hernia belt you have been given." *Id*. On May 17, 2019, before Plaintiff received a response to his second appeal relating to the alleged inadequate hygienic products, Plaintiff was released from HCJ. Doc. 30 at 2; *see also* Doc. 30-10 at 31.

Relating to Plaintiff's claims of unsanitary conditions in HCJ, Defendant Brazier testified in his affidavit:

> [e]ach day inmates are provided with cleaning supplies to clean their cells and day room living areas. Inmates are expected to keep the cell blocks, including the bathrooms, clean. Corrections Deputies frequently conduct cell inspections for cleanliness. Periodically Corrections Deputies and inmate workers will assist inmates in cleaning cells and dayrooms and conduct a deep cleaning. The [HCJ] does not have a problem with mold or mildew in any part of the Facility. Mattress pads are cleaned when they are turned into staff when an inmate is released or transferred. Inmates may use cleaning supplies to clean their mattress pads at any time.

Doc. 32-1 at 4-5. Defendant Brazier further testified, as to Plaintiff's allegations of inadequate hygienic products:

> I contacted the company that supplied indigent supply kits to the [HCJ] during the relevant time period and confirmed the contents received by the Plaintiff. As an indigent inmate, Plaintiff could have chosen one of the three types of packs on the kiosk to order. Each of the three packs contained 2 ounces of shampoo and body wash and .85 ounces of toothpaste. No pack contained deodorant. Each pack contained stamped envelopes and 4 sheets of paper. A toothbrush and a writing pen were also options in the indigent kits. To my knowledge, all federal and state laws have been followed in the Houston County Sheriff's employees handling of indigent supplies at the [HCJ] during Plaintiff's incarceration.

Doc. 46-1 at 2. Regarding Plaintiff's food complaints, Defendant Peterson testified in her affidavit, HCJ "serves a hot breakfast, a hot lunch, and a hot dinner. Meals meant to be served hot are not intentionally served cold at the [HCJ]. Every effort is made to serve food in a timely manner at the optimal temperature." Doc. 30-7 at 4. Defendant Peterson further testified that she never "picked through food," and, to the extent Plaintiff asserts constitutional deprivation by being denied certain television channels, "[v]iewing television programs is a privilege. . . .[and] [t]he jail receives television channels through the Dish Network." *Id*. at 5. "Program choices are never made by race." *Id*.

Last, relating to Plaintiff's claims of deliberate indifference to his serious medical needs, Defendant Smoak testified,

> During Plaintiffs incarceration I practiced under the supervision of Mark Choquette, M.D. Several LPNs have also provided medical care for inmates. I am present at the jail approximately eight hours a day Monday through Friday. An LPN is present at the jail daily.
>
> Inmates needing medical care are examined at the medical clinic located inside the jail. The medical professionals run the medical clinic and all instructions of the medical personnel are followed by jail staff.
>
> The medical staff prepares medication for distribution to inmates. The LPNs conduct 'med call' on a set schedule each day at the jail.

> I have not observed staff members of the [HCJ] take any deliberate action to block, deny, or delay access of an inmate to health care. All instructions of medical personnel are followed by jail staff including all instructions regarding appointments with outside medical providers, dietary needs, housing and treatment for any inmate. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.
>
> Plaintiff was examined by medical professionals multiple times during his most recent incarceration at the [HCJ] and, to my knowledge, all instructions of medical staff have been followed by corrections staff. Plaintiff has continually had access to medical professionals during his incarceration.
>
> Specifically, I have taken no action to restrict, block or delay Plaintiff's access to any medical provider or any medical treatment.
>
> I have never refused to treat Plaintiff for any medical issue. Specifically, I have never refused to treat Plaintiff for any issue regarding a hernia. Plaintiff has been treated with the standard of care for a hernia and was examined frequently in the jail medical clinic. Plaintiff has been provided ibuprofen and a hernia belt. During Plaintiffs most recent incarceration hernia surgery would have been an elective procedure.
>
> At no time, was Plaintiff denied adequate medical care during his incarceration in the [HCJ].

Doc. 30-4 at 2-3. Further, in response to Plaintiff's allegations that Defendant Moore denied or delayed medical treatment, Defendant Moore testified in her affidavit:

> On the evening of May 22, 2018, Corrections Deputies responded to Plaintiff's statements that he needed medical attention. Plaintiff stated that he was vomiting, had stomach pain and was short of breath. Plaintiff was escorted to the medical clinic and his vital signs were taken. Due to Plaintiff's complaints and blood pressure I called [Defendant Smoak] and informed [Defendant Smoak] of Plaintiff's complaints and vitals. [Defendant Smoak] instructed me to give the Plaintiff a medication to reduce blood pressure. [Defendant Smoak] stated that he would examine Plaintiff the following morning. Plaintiff was not vomiting blood in this instance. Plaintiff was not made to struggle unassisted into a wheelchair. I have never made any remark or comment to Plaintiff questioning the authenticity of his medical ailments or complaints.

Doc. 30-5 at 4-5.

### III.   Discussion

#### A.   Exhaustion

Defendants raise the defense of exhaustion in this action. Doc. 30 at 7. In addressing the requirements of 42 U.S.C. § 1997e as to exhaustion, the Eleventh Circuit has

8

> recognized that '[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court.' *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means that 'until such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court. *See id.* (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ('reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies' before ***filing*** suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), '[a]n inmate incarcerated in a state prison ... must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.'); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original). Further, the law is well-settled that "the question of exhaustion under the PLRA [is] a threshold matter that [federal courts must] address before considering the merits of the case. Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). The Court will therefore "resolve this issue first." *Myles*, 476 F. App'x at 366.

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion." *Myles*, 476 F. App'x at 366 (internal quotation marks omitted) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. [As noted *supra*,] the judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535 (internal citations

9

omitted). Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury [or other factfinder]." *Id.*

Notably, "a prisoner cannot 'proceed ... to federal court' after bypassing available administrative remedies, either by failing to properly exhaust administrative remedies or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose 'no significant sanction' on the prisoner and 'the PLRA did not create such a toothless scheme.'" *Johnson v. McCarty*, No. CIV A 1:07CV52-MHT, 2008 WL 5429837, at *4 (M.D. Ala. Dec. 31, 2008) (quoting *Woodford v. Ngo,* 126 S.Ct. 2378, 2388 (2006)). "Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure." *Id*. (citing *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Cox v. Mayer,* 332 F.3d 422, 424-28 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies **and who had since been released from custody**); *see also Massey v. Helman,* 196 F.3d 727, 733 (7th Cir.1999)) (emphasis added).

Upon review of the complaint, Defendants' special report and the undisputed evidentiary materials filed in support thereof and Plaintiff's response to the special report, the Court concludes that Defendants' motion to dismiss is due to be granted for Plaintiff's failure to exhaust his claims. It is undisputed that HCJ had a grievance procedure in place which included appellate remedies. Docs. 30-1, 30-2, 30-3, 30-5, 30-7, 30-12, 32-1, 32-2. Also undisputed by Plaintiff is that, while he appealed one grievance response, the process was not complete when he filed this pending action. Doc. 1 at 12. Indeed, the record reflects Plaintiff filed this case, asserting numerous alleged constitutional deprivations approximately one week after appealing one grievance response relating to Plaintiff's claims of inadequate hygienic products. *See* Doc. 30-10 at 31. Accordingly, the Court concludes that the Plaintiff's Eighth Amendment deliberate indifference and conditions claims are due to be dismissed, because Plaintiff failed to exhaust these claims via HCJ's grievance procedure. Insofar as Plaintiff argues, because he has since been released from HCJ custody, he is unable to exhaust his administrative remedies, as noted *supra*, the PLRA's exhaustion requirement contains no futility exception where there was an available inmate grievance procedure. *See Johnson*, 2008 WL 5429837, at *4. Thus, the Court concludes that this entire action could be dismissed on the basis of exhaustion alone.

However, for the reasons set forth below, the Court also recognizes that: (1) the principles of sovereign immunity, mandate dismissal of Plaintiff's official capacity claims asserted against Defendants Valenza, Smoak, Brazier, Moore, Peterson, Jones, Watson, and Marsh for money damages;

(2) absolute immunity bars Plaintiff's individual capacity claims asserted against Defendant Culver; and (3) Plaintiff's condition of confinement claims relating to cold food and inadequate television variety fail to state a § 1983 claim.

### B. Sovereign Immunity

Insofar as Plaintiff requests monetary damages from Defendants Valenza, Smoak, Brazier, Moore, Peterson, Jones, Watson, and Marsh in their official capacities, these defendants are entitled to sovereign immunity. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848-49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). In light of the foregoing, Defendants Valenza, Smoak, Brazier, Moore, Peterson, Jones, Watson, and Marsh are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### C. Absolute Immunity

Next, as to Plaintiff's allegations against Defendant Houston County, Alabama Commissioner Mark Culver, this defendant is entitled to absolute immunity on Plaintiff's individual capacity claims. Well-recognized is that, "County commissioners are entitled to absolute immunity under § 1983 for claims arising from the appropriation of funds. . . ." *Flournoy v. Culver*, No. 1:10-CV-104-ID, 2010 WL 916577, at *1 (M.D. Ala. Mar. 11, 2010) (citing *Woods v. Garner,* 132 F.3d 1417, 1420 (11th Cir.1998) ("The budgetary decisions made by defendants for funding the county-including the jail-are legislative acts protected by legislative immunity.")). Because Plaintiff's claims challenge the appropriation of funds as to the provision of indigent hygienic packs, Defendant Culver is entitled to absolute immunity on Plaintiff's individual capacity claims seeking monetary damages.

### D. *Plaintiff's conditions claims relating to being served cold food and being denied access to certain television channels*

While this Court recommends dismissal of Plaintiff's claims for failure to exhaust Plaintiff's administrative remedies, for the foregoing reasons, Plaintiff's claims asserting constitutional deprivations for being served cold, sifted through food, and not being provided access to certain television shows or channels are due to be dismissed for failure to state a claim.

Prison officials have a duty under the Eight Amendment to "ensure that inmates receive adequate food, clothing, shelter and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Plaintiff asserts a violation of his Eighth Amendment rights claiming Defendants acted with deliberate indifference by serving him cold, sifted through food and denying Plaintiff access to certain television channels.

To demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. Under the "objective" inquiry, a prisoner must allege a condition sufficiently serious to amount to the denial of a basic human need. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) ("Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (citations and quotations omitted); *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). The condition must be extreme and pose an unreasonable risk of serious damage to the prisoner's future health or safety. *Id.* Restrictive or even harsh conditions alone do not rise to the level of an Eighth Amendment violation. *Id*. Under the "subjective" inquiry, the prisoner must allege the official acted with at least deliberate indifference. *Farmer,* 511 U.S. at 834.

"The Constitution requires that prisoners be provided 'reasonably adequate food.'" *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1986) (citation and quotation marks omitted). A well-balanced meal of enough nutritional value to preserve health satisfies this requirement. *Id*. "The fact that food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id*. (citation and quotation marks omitted).

Further, "[l]ack of telephone and television access are not conditions considered so 'extreme' that the denial thereof 'violates contemporary standards of decency.'" *Johnson v. Adkins*, No. 220CV00827LSCHNJ, 2020 WL 5882211, at *10 (N.D. Ala. Sept. 3, 2020), *report and recommendation adopted*, No. 220CV00827LSCHNJ, 2020 WL 5888045 (N.D. Ala. Oct. 2, 2020) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004); *see also Ellis v. Pierce Cty., GA*, 415 F. App'x 215, 218 (11th Cir. 2011) (no television and limited access to a telephone do not state constitutional deprivations); *Smith v. Deemer*, 641 F. App'x 865, 867-68 (11th Cir. 2016) (holding prisoner's lack of television and telephone access, among other conditions, was not unconstitutionally extreme)).

Plaintiff's claims regarding being served cold, sifted through food, while unpleasant, does not, without more, demonstrate that his constitutional rights were violated. *See Bennett v. Misner*, 2004 WL 2091473 *20 (D. Or. 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation."). Similarly, while Plaintiff preferred watching other channels or shows, this claim does not rise to the level of deprivation of constitutional rights.

As explained, the objective component of an Eighth Amendment claim requires Plaintiff to show that the condition about which he complains was so extreme as to deprive him of the "'minimal civilized measure of life's necessities.'" *Chandler*, 379 F.3d at 1289 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Plaintiff's assertions regarding the food service at HCJ or access to certain television shows or channels do not meet this high standard. Because these condition of confinement claims against Defendants fail to assert a deprivation which rises to the level of a constitutional violation, they are subject to dismissal.

### IV.     Conclusion

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant McCallister be DISMISSED from this case pursuant to Rule 4(m).

2. Defendants' motion to dismiss and or for summary judgment (Doc. 30) be GRANTED as specifically set forth herein.

3. Judgment be GRANTED in favor of Defendants.

4. this case is DISMISSED.

5. No costs be taxed.

On or before **January 26, 2022,** the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made. Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 12th day of January 2022.

/s/ CHARLES S. COODY
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE